**UNITED STATES of America**
**v.**
**Jerome E. CARY, Appellant.**
**No. 72–1109.**

United States Court of Appeals,
District of Columbia Circuit.
Nov. 3, 1972.

---

**470**

Mr. Raymond J. Rasenberger, and Mrs. Constance Berkley Margolin, Wash-ington, D. C., (both appointed by this Court) were on the brief for appellant.

Messrs. Harold H. Titus, Jr., U. S. Atty., with whom John A. Terry, James E. Sharp, and William E. Reukauf, Asst. U. S. Attys. were on the brief for appellee.

Before BAZELON, Chief Judge, and ROBINSON and ROBB, Circuit Judges.

PER CURIAM:

The complainant in this prosecution was awakened about 2:45 a. m. on May 24, 1970 by someone in her bedroom. The intruder took a small amount of cash from the top of the television, and, after searching the complainant's pocketbook for more money raped her. Arriving upon complainant's call to the police, Officer Nixon found that a pane of glass had been removed from the back door to complainant's second floor apartment and had been placed next to the iron railing on the back porch just outside the door. Fingerprints lifted from the glass pane proved to be Appellant's. The complainant, unable to identify the Appellant, gave a general description of the attacker.

Appellant was convicted of first-degree burglary,[1] rape,[2] and robbery.[3]

■ Three issues are raised on appeal. First, Appellant contends there is insufficient evidence to support the convictions, particularly with respect to the rape count. The elements of rape are, for present purposes, 1) the *corpus delicti,* or physical act, and 2) the identification of the assailant. Carter v. United States, 138 U.S.App.D.C. 349, 437 F.2d 619 (1970); Franklin v. United States, 117 U.S.App.D.C. 331, 330 F.2d 205 (1964). Here, Appellant concedes there is sufficient corroborating evidence with respect to the *corpus delicti.*[4]

---

1. 22 D.C.Code § 1801(a).

2. 22 D.C.Code § 2801, "carnal knowledge of a female forcibly and against her will".

3. 22 D.C.Code § 2901.

4. Besides complainant's general description of her assailant and the fingerprint evidence, testimony was given by a neighbor that she was awakened early in the morning by the complainant, who "hysterically screamed" that she had just been raped. A later examination of the complainant at D.C. General Hospital also confirmed the presence of intact sperm.

The only question is whether there is sufficient evidence as to the identification of the Appellant as assailant. Since the complainant was unable to identify the Appellant and could give merely a general description of the assailant, the sufficiency of identification rests most heavily upon the only other identifying evidence introduced—fingerprints found on the window pane of the complainant's back door. Of course, under the proper procedures fingerprint evidence is admissible as evidence of identification. But whether evidence concerning fingerprints, standing alone, is sufficient to sustain a conviction will depend upon the facts and circumstances of each case. Borum v. United States, 127 U.S.App. D.C. 48, 380 F.2d 595 (1967); Hiet v. United States, 124 U.S.App.D.C. 313, 365 F.2d 504 (1966); Stevenson v. United States, 127 U.S.App.D.C. 43, 380 F.2d 590 (1967). The decision will often turn on the extent to which the fingerprinted object was accessible to the defendant. For instance, do the circumstances negate the possibility that the defendant may have touched the object at some other time? In *Borum* [5] we found that they did not. In *Stevenson* we found that they did.[6] Or do the circumstances sufficiently place the defendant in the vicinity of the crime when the crime was committed. In *Hiet* they did not—and we reversed.[7] Or, sometimes, the very nature of the fingerprints will place the defendant at the scene of the crime when the crime was committed. Just such a case is the one before us.

There was testimony that the window had been installed only three months earlier and that it had *not* been installed by the Appellant; that the complainant washed the windows "frequently"; that Appellant's prints were found on *both sides* of the glass; that Appellant's prints were found not only over the general window area, but also over the surface of the glass covered by wooden molding strips which secured the window in the door. Furthermore, the complainant stated that she had checked the door

---

5. In Borum, the government introduced no evidence indicating the fingerprinted objects were inaccessible to the defendant. The objects were glass jars inside complainant's house. "The jury had no way to determine where the complainant purchased the jars, or how long he had them before [the date of the crime], or whether complainant ever removed them from his home". 127 U.S.App.D.C. 48, 50, 380 F.2d 595, 597. The prints may have been on the jars for years or the defendant may have had legitimate access to the house on another occasion. There was no way—short of mere speculation—for the jury to find that the defendant touched the jars during commission of the crime.

6. In Stevenson, too, there were introduced into evidence fingerprints found on household objects. "However, the Government went further. The owner of these objects testified that he purchased them five and twelve years ago respectively and that they had never left his house. The evidence indicated that Stevenson touched a tin tea canister found at the scene of the crime. The owner of the canister testified that she received it three years ago, and the owner of the house testified that it had not left the house since then. The Government's fingerprint expert testified that under ideal conditions these fingerprints could last up to two years. Complainant testified that neither defendant had ever been given permission to enter the house." 127 U.S.App.D.C. 43, 47, 380 F.2d 590, 594.

7. In Hiet, complainant returned to his parked car to find the vent window jimmied open and valuable items missing from within. Hiet's fingerprints were found on the open vent window. "The only evidence against Hiet in this case was the fingerprint taken from the car window, identified as his. He was not placed in the vicinity of the car on the evening in question, or in that immediate neighborhood at any other time. He was not shown to have been in possession of any of the stolen property at any time . . . Evidence showed that Hiet had been living and working in the city four or five days prior to the date in question. The print may have been put on the window on any one of those days or nights. . . . Hiet, wandering about the street or simply passing by, at a time other than the thirty-minute period critical in this case, may have pushed on the unlocked vent; perhaps he did so for no good purpose." 124 U.S.App.D.C. 313, 314, 365 F.2d 504, 505.

and window before going to bed at 2:00 a. m. Officer Nixon found the pane removed at 3:35 a. m. Thus, if the Appellant had touched the glass prior to its installation in the door, his prints could not have appeared later on the window surface—they would have been removed by the frequent washings. Or, if the Appellant had touched the glass after installation and before the crime, the prints could not have appeared on the area covered by the wooden molding strips. But, as it was, prints were taken from both areas, placing Appellant on the complainant's porch between the hours of two and three-thirty in the morning—just when the crimes were committed. We cannot say that this evidence and the complainant's general description of the assailant were insufficient for the jury to find beyond a reasonable doubt that Appellant was the attacker.

Appellant further contends that the instruction of the court on the need for corroboration of the complaining witness' identification was insufficient.[8] But we find no error. It is true that in certain circumstances we have required an instruction concerning the need for corroboration of a complaining witness' identification since there are dangers of erroneous or false identification by such complainants.[9] But where, as here, there is no identification by the complainant, we have allowed the identity of the accused to rest on other evidence that the Appellant was the attacker.[10] We have already noted that such other evidence with respect to identification was sufficient to justify submitting the case to the jury. The trial judge properly instructed the jury that, on the basis of all the evidence presented, the identity of the accused must be established beyond a reasonable doubt, and we conclude that in its entirety the instruction of the trial judge on the matter of identification was sufficient for the circumstances of this case.

Nor is there merit to Appellant's claim that he was denied a speedy trial. Appellant cites our decision in United States v. Holt, 145 U.S.App.D.C. 185, 448 F.2d 1108 (1971), where we said that the defense claim has prima facie merit if the lapse between arrest and trial is longer than one year. Here the lapse was 13 months. But we made clear in *Holt* that other factors must be considered including the reason for delay, the diligence of defense counsel, and the likelihood that the defendant has been prejudiced by the delay. Barker v. Wingo, 407 U.S. 514, 522–533, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Here the issue was not raised at trial, Appellant makes no specific claim of prejudice, and none appears from the record.

Affirmed.

---

8. Appellant does not contend that the court's instruction with respect to the *corpus delicti* was insufficient, but admits that the court was quite clear on the requirement of corroboration of the corpus delicti.

9. Carter v. United States, 138 U.S.App. D.C. 349, 427 F.2d 619 (1970) ; Franklin v. United States, 117 U.S.App.D.C. 331, 330 F.2d 205 (1964). Of course, while it may be a *general* rule that corroboration is required, we have also pointed out that "the danger of an erroneous identification in a rape case is not of the same magnitude as the danger of a fabricated rape". 117 U.S.App.D.C. 331, 334, 330 F.2d 205, 208 (1964). We also noted in Carter that "the facts of a particular case may be such that a convincing identification by the complaining witness based upon adequate opportunity to observe need not be further corroborated." 138 U.S.App.D.C. 349, 354, 427 F.2d 619, 624.

10. See, e. g., Clemons v. United States, 114 U.S.App.D.C. 273, 314 F.2d 278, where it was held that circumstantial evidence that defendant was the attacker, including a baseball ticket stub admittedly used by the defendant earlier in the evening and found on the floor in the room in which the rape occurred, justified submitting the case to the jury in spite of the fact that the victim was unable to identify the defendant as the assailant.