James L. WATKINS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18421.

United States Court of Appeals District of Columbia Circuit.

Decided Nov. 13, 1964.

---

Mr. Joseph J. Barse (appointed by this court), Washington, D. C., was on the pleadings for appellant.

Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Anthony A. Lapham, Asst. U. S. Attys., were on the pleadings for appellee.

Before BAZELON, Chief Judge, and WASHINGTON and WRIGHT, Circuit Judges, in Chambers.

BAZELON, Chief Judge.

The Juvenile Court waived jurisdiction of appellant, who was sixteen years old when he allegedly committed housebreaking and larceny, and he was convicted of these offenses in the United States District Court. Appellant's counsel now moves for disclosure of certain Juvenile Court records as essential in presenting this appeal.

District of Columbia Code § 11–1586(b) (Supp. III, 1964) provides that Juvenile Court social records [1] "shall be made available * * * to any court before which the child may appear." Pursuant to this provision, we ordered the Juvenile Court to transmit to this court appellant's social records for *in camera* inspection. Compare Kent v. Reid, 114 U.S.App.D.C. 330, 334–335, 316 F.2d 331, 335–336 (1963). We also requested from the Juvenile Court "a statement of its views as to what parts of appellant's social records are so confidential that appellant's counsel should be denied access." Order entered Sept. 10, 1964. Chief Judge Miller of the Juvenile Court responded in pertinent part:

"Our statute covering this subject does not use the word "confidential." I am quite aware that there have been frequent references to the necessity for preserving the confidentiality of *all* social records. This represents, in my opinion, an institutional position which is so broad as to be unrealistic and impractical. On the other hand, turning over of the entire social file to an attorney would encourage "fishing expeditions" and litigation of matters of a quasi-privileged nature elicited from juveniles, their parents and other interested parties. What should be applied in any individual case as to the documents in a social file which may be made available to an attorney for the juvenile and the government is a set of standards against which to measure the particular request of the juvenile's attorney.

\* \* \* \* \* \*

"In the light of the foregoing and consistent with the spirit of Section 11–1586(b), as well as our experiences with such records, any set of standards to be applied should, in my opinion, be confined to these two:

"1. The document must bear on the purpose for which the juvenile's counsel has requested examination.

"2. The document should not be one where secrecy must be preserved as to the source of information supplied to the Juvenile Court in confidence."

In the present case, appellant filed a pre-trial motion to dismiss the indictment on the ground that the Juvenile Court did not waive jurisdiction until eleven months after appellant had been arrested

---

[1] "Social records" primarily are reports of investigations concerning the child, including an "investigation of the home and environmental situation of the child, his previous history, and the circumstances [which brought him before the court] * * *" and reports about his "conduct and condition" while under supervision if he had been confined or placed on probation. D.C.CODE §§ 16–2302, 11–1524 (Supp. III, 1964).

for the alleged offense and that this delay between arrest and waiver deprived appellant of his constitutional right to a speedy trial. Based upon its examination of appellant's Juvenile Court social records, the court ruled that the Juvenile Court's delay in waiving jurisdiction was not improper. Although the court refused to disclose the social records upon which it relied, it did briefly summarize entries made in the social records during the eleven months between the present arrest and waiver. But the court did not summarize any of the social records concerning appellant's Juvenile Court history during the four years prior to his arrest on the present charges.

The trial court found that the Juvenile Court delayed waiver because it sought to exhaust treatment possibilities in its own facilities, and waived jurisdiction only after these resources proved inadequate. For this purpose consideration by the Juvenile Court of appellant's entire past history would have been necessary in deciding between treatment and waiver, and by the District Court in reviewing the propriety of the eleven month delay. Because the request involves all appellant's social records and because appellant necessarily challenges the propriety of the Juvenile Court's waiver, the present request for disclosure is governed by the principles which apply generally to disclosure of social records when waiver of jurisdiction is in issue.

District of Columbia Code § 11–1586(b) (Supp. III, 1964) provides that Juvenile Court social records

"shall be withheld from indiscriminate public inspection, except that they shall be made available by rule or special order of court to such persons, governmental and private agencies, and institutions as have a legitimate interest in the protection, welfare, treatment, and rehabilitation of the child under 18 years of age * * * ."

Appellant's counsel says that a "legitimate interest in the protection * * * of the child" exists here. But the Government argues that § 11–1586(a), which allows inspection of certain Juvenile Court records by "duly authorized attorneys," specifically excludes "social records" and that the absence of any reference to attorneys in subsection (b) reveals a statutory scheme to bar attorneys from access to social records.

■ We disagree with the Government's reading of the statute. Under the express terms of § 11–1586(a) attorneys may see, *as of right*, all Juvenile Court legal records; [2] and we think it clear that subsection (b) allows an attorney to inspect social records *in limited circumstances*. [3] These circumstances are

**2.** Section 11–1586(a) provides:

"The Juvenile Court shall maintain records of all cases brought before the court pursuant to subchapter I of chapter 23 of Title 16. The records shall be withheld from indiscriminate public inspection but shall be open to inspection only by respondents, their parents or guardians and their duly authorized attorneys, and by the institution or agency to which the respondent under 18 years of age may have been committed pursuant to sections 16–2307 and 16–2308.

"Pursuant to rule or special order of the court, other interested persons, institutions, and agencies may inspect the records. As used in this subsection, 'records' includes:

"(1) notices filed with the court by arresting officers pursuant to section 16–2306;

"(2) the docket of the court and entries therein;

"(3) the petitions, complaints, informations, motions, and other papers filed in a case;

"(4) transcripts of testimony taken in a case tried by the Court;

"(5) findings, verdicts, judgments, orders and decrees; and

"(6) other writings filed in proceedings before the court, other than social records."

**3.** The House Report accompanying the present § 11–1586 stated:

"The judge of the juvenile court has taken the view that she has no authority to permit the divulging of social records to anyone other than the staff of the court. This ruling has had the effect of withholding information from certain agencies which the agencies

not specified; they must be determined in individual cases according to the purposes of the Juvenile Court Act for the "protection, welfare, treatment, and rehabilitation of the child." Because waiver by the Juvenile Court may be set aside by this court [4] or by the District Court,[5] either court, in aid of its jurisdiction, may order disclosure of Juvenile Court social records to an attorney.

In this court or the District Court, the attorney's constitutionally sanctioned adversarial role gives him a "legitimate interest" generally in seeing his client's Juvenile Court social records.[6] But even if the attorney has such interest, disclosure may not be required in all circumstances. Confidentiality may be justified, for example, where there is genuine need to conceal the identity of informants or where the information would disrupt family relationships or where disclosure would unduly interfere with the treatment or rehabilitation of the child.[7] Whether disclosure should be granted in spite of competing considerations will depend upon (a) the importance of the issue, for which disclosure is sought, to the welfare or freedom of the child; and (b) the relevance, generously construed, of the requested records to that issue.

Where, as here, the child's attorney challenges waiver by the Juvenile Court, the need for confidentiality of any

---

need to carry on their work properly.

"In order that the situation may be clarified and the court vested with discretion to permit the divulging of such information in proper cases, it is believed desirable that the act be amended.

\* \* \* \* \*

"Subsection (b) provides that the social records shall be withheld from indiscriminate public inspection but also provides that the Board of Public Welfare and its authorized employees shall be entitled to inspect such records. Any other interested persons and governmental and private agencies, as the judge determines by rule or special order of the court, may inspect such social records. *This provision would allow the judge to determine which persons and agencies have a legitimate interest in the records and, if she so determines, she could in her discretion allow such persons and agencies to inspect the social records.*"

H.R.REP.No. 1937, 82d Cong., 2d Sess. 2 (1952), emphasis supplied.

4. Green v. United States, 113 U.S.App.D. C. 348, 308 F.2d 303 (1962); Kent v. Reid, 114 U.S.App.D.C. 330, 316 F.2d 331, 333 (1963); Kent v. United States, No. 17935, 119 U.S.App.D.C. ——, 343 F.2d 247, decided Oct. 26, 964.

5. United States v. Anonymous, 176 F. Supp. 325 (D.D.C.1959); Franklin v. United States, 117 U.S.App.D.C. 331, 330 F.2d 205, 210 (1964); D.C.CODE § 11-1553 (Supp. III, 1964). See United States v. Stevenson, 170 F.Supp. 315 (D. D.C.1959).

6. Where waiver of jurisdiction is in issue before the Juvenile Court, it would appear that an attorney has a "legitimate interest in the protection, welfare, treatment, and rehabilitation of the child" which supports disclosure of social records. The informal, non-adversarial nature of the Juvenile Court proceedings, which is often cited to limit the measure of attorney interest and participation required for the "protection of the child," rests on the premise that no criminal sanctions are threatened. Compare Shioutakon v. District of Columbia, 98 U.S. App.D.C. 371, 236 F.2d 666, 60 A.L.R. 2d 686 (1956); McDaniel v. Shea, 108 U.S.App.D.C. 15, 278 F.2d 460 (1960); Pee v. United States, 107 U.S.App.D.C. 47, 274 F.2d 556 (1959), with In re Custody of a Minor, 102 U.S.App.D.C. 94, 250 F.2d 419 (1957). See also In re Poff, 135 F.Supp. 224 (D.D.C.1955). But since waiver of jurisdiction directly invokes a threat of criminal sanctions the ground for limitation of the attorney's role disappears. See generally Furlong, *The Juvenile Court and the Lawyer*, 3 J. of FAMILY LAW 1 (1963); Paulsen, *Fairness to the Juvenile Offender*, 41 MINN.L.REV. 547, 566–67 (1957).

7. See, *e.g.*, Note, *Employment of Social Investigation Reports in Criminal and Juvenile Proceedings*, 58 COLUM.L.REV. 702, 725–26 (1958).

Where the need for confidentiality can be adequately met by summarization or deletion of a particular item in the social records, this should be done.

parts of the social record must be compelling in order to bar disclosure. In effect, waiver is a judicial determination that the child is beyond the rehabilitative philosophy of the Act.[8] Such determination may well discourage adult authorities from expending scarce resources in rehabilitative efforts. And the disabilities resulting from conviction in the District Court are in sharp contrast with the effects of a Juvenile Court commitment which "does not operate to impose any of the civil disabilities ordinarily imposed by conviction, and a child is not deemed a criminal by reason of an adjudication." D.C.CODE § 16–2308 (Supp. III, 1964). Waiver is critically important for the child who may be abandoned as "incorrigible" and for the society which has thus abandoned the child.

All of the social records concerning the child are usually relevant to waiver since the Juvenile Court must be deemed to consider the entire history of the

child in determining waiver. The relevance of particular items must be construed generously. Since an attorney has no certain knowledge of what the social records contain, he cannot be expected to demonstrate the relevance of particular items in his request.[9]

The child's attorney must be advised of the information upon which the Juvenile Court relied in order to assist effectively in the determination of the waiver question, by insisting upon the statutory command that waiver can be ordered only after "full investigation," and by guarding against action of the Juvenile Court beyond its discretionary authority.[10]

We remand the record in this case to the District Court for supplemental proceedings to determine, pursuant to the standards discussed, the extent to which the social records may be disclosed to appellant's attorney.

8. See Sargent & Gordon, *Waiver of Jurisdiction: An Evaluation of the Process in the Juvenile Court*, 9 CRIME & DELINQUENCY 121 (1963).

9. We recently held in Kent v. United States, No. 17935, decided Oct. 26, 1964, that the Juvenile Court was justified in refusing disclosure of social records "in advance of waiver" on the narrow ground that the requested records were not relevant to the attorney's essential purpose in requesting disclosure. The attorney's "central purpose was to have [the social records] examined by [the child's own] psychiatric experts. There is no claim that these experts needed the records in arriving at their diagnosis." 119 U.S. App.D.C. at ——, 343 F.2d at 247. We held that the attorney did not need the records for the only purpose for which he sought them in the Juvenile Court. Later, in the District Court, Kent's attorney was granted disclosure of all social records.

10. We note that disclosure of social records to the child's attorney does not permit indiscriminate public knowledge of those records. Section 11–1586(b) provides in pertinent part:

"* * * Persons, agencies, or institutions receiving records or information pursuant to this subsection may not publish or use them for any purpose other than that for which they were received."

Section 11–1586(c) provides:

"Whoever, except for the purposes permitted and in the manner provided by subsections (a) and (b) of this section, discloses, receives, or makes use of, or authorizes, knowingly permits, participates in, or acquiesces in, the use of information concerning a juvenile before the court, directly or indirectly derived from the records, papers, files, or communications of the court, or acquired in the course of official duties, upon conviction thereof, shall be guilty of a misdemeanor, and shall be fined not more than $100 or imprisoned not more than ninety days, or both."