Larry O. BLACK, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 19038.

United States Court of Appeals
District of Columbia Circuit.

Argued June 10, 1965.

Decided Dec. 8, 1965.

Mr. Jefferson D. Kirby, III, Washington, D. C. (appointed by this court), for appellant. Messrs. William W. Greenhalgh, Marvin J. Brenner, Robert S. Hall, Jr., and William Bryan Martin, Washington, D. C. (all appointed by this court), also entered appearances for appellant.

Mr. Edwin C. Brown, Jr., Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., at the time the brief was filed, Frank Q. Nebeker and Barry Sidman, Asst. U. S. Attys., were on the brief, for appellee. Mr. John A. Terry, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, and FAHY and LEVENTHAL, Circuit Judges.

BAZELON, Chief Judge:

Appellant was sixteen years of age at the time of the alleged housebreaking and robbery involved herein. The Juvenile Court waived jurisdiction [D.C. Code § 11–914 (1961), now § 11–1553 (Supp. IV, 1965)], and he was tried and convicted in the District Court. Before trial he unsuccessfully objected to the waiver on the grounds that (1) he was not represented by counsel in the Juvenile Court; (2) the Juvenile Court failed to conduct a "full investigation" as required by statute; and (3) the Juvenile Court abused its discretion. Appellant also requested the District Court to invoke its discretion under § 11–914 to "exercise the powers conferred upon the juvenile court" even if it found no error in the Juvenile Court's determination. Appellant renews these complaints in this appeal and asserts that the District Court gave them only cursory consideration.

We hold that the assistance of counsel in the "critically important" determination of waiver is essential to the proper administration of juvenile proceedings.

[D]isabilities resulting from conviction in the District Court are in sharp contrast with the effects of a Juvenile Court commitment which "does not operate to impose any of the civil disabilities ordinarily imposed by conviction, and the child is not deemed a criminal by reason of an adjudication." D.C.Code § 16–2308 (Supp. III, 1964). [Watkins v. United States, 119 U.S.App.D.C. 409, 413, 343 F.2d 278, 282 (1964).]

Treatment as a juvenile is not a statutory bounty which can be withdrawn lightly. "It is implicit in [the Juvenile Court] scheme that non-criminal treatment is to be the rule—and the adult criminal treatment, the exception which must be governed by the particular factors of individual cases." Harling v. United States, 111 U.S.App.D.C. 174, 177–178, 295 F.2d 161, 164–165 (1961).

We have recognized that counsel in a waiver proceeding has a "legitimate interest" in inspecting the juvenile's confidential social file. Watkins v. United States, *supra*. Counsel can "assist effectively in the determination of the waiver question, by insisting upon the statutory command that waiver be ordered only after a 'full investigation,' and by guarding against action of the Juvenile Court beyond its discretionary

authority." Watkins v. United States, *supra.* His role is "to present to the court anything on behalf of the child which might help the court in arriving at a decision * * *." Kent v. United States, 119 U.S.App.D.C. 378, 389, 343 F.2d 247, 258, cert. granted, 381 U.S. 902, 85 S.Ct. 1450, 14 L.Ed.2d 284 (1965). *Kent* illustrates the need for counsel to develop information relevant to waiver: On the same afternoon that counsel was retained, he met with the child's mother and the Social Service Director of the Juvenile Court "for the purpose of making representations against any possible waiver * * *"; he submitted a memorandum on the question of waiver together with a report from a psychiatrist relating to the child's mental condition; he filed motions with the Juvenile Court asking that appellant be hospitalized, that his social service file be disclosed, and that a hearing be held prior to waiver; he arranged for two psychiatrists and a psychologist to examine appellant in the Receiving Home, and submitted reports of their findings.[1]

In Shioutakon v. District of Columbia, 98 U.S.App.D.C. 371, 236 F.2d 666 (1956), we held that, although criminal sanctions were not imposed in juvenile proceedings, nevertheless the "serious nature and effect" of the adjudication of violation of law was such that the Act contemplated certain safeguards which the child could not secure without the assistance of counsel.[2] The need is even greater in the adjudication of waiver since it contemplates the imposition of criminal sanctions.[3]

Moreover, the vitality and applicability of *Shioutakon* is underscored by the passage four years later of the Legal Aid Act,[4] which provides for the assistance of counsel "in proceedings before the juvenile court of the District of Columbia." Assistance is not limited to "hearings." Waiver is clearly within the "proceedings." [5] Those who have the

1. In *Kent,* the Juvenile Court denied counsel access to the child's social file. The Supreme Court has granted certiorari and may consider whether such denial deprived Kent of the effective assistance of counsel. Compare Watkins v. United States, 119 U.S.App.D.C. 409, 343 F.2d 278 (1964).

2. "[A]n intelligent exercise of the juvenile's rights under the Act and the Rules [of the Juvenile Court] clearly requires legal skills not possessed by the ordinary child under 18 * * *." *Shioutakon, supra,* at 375, 236 F.2d at 670. This applies equally to waiver. See Watkins v. United States, *supra.* The eight factors deemed relevant to waiver set forth in Policy Memorandum No. 7 of the Juvenile Court illustrate the need for counsel. *Juvenile Court of the District of Columbia, Policy Memorandum No. 7,* Nov. 30, 1959. See Sargent & Gordon, *Waiver of Jurisdiction, An Evaluation of the Process in the Juvenile Court,* 9 CRIME & DELINQUENCY 121 (1963). A child may not be expected to be aware of their existence or the means for presenting information relevant thereto. "[T]he assistance of counsel might well have furthered the best interests of the child and of the authorities responsible in this delicate area of social welfare." McDaniel v. Shea, 108 U.S.App.D.C. 15, 17, 278 F.2d 460, 462

(1960) (granting parent right to counsel in Juvenile Court proceeding revoking juvenile's probation under the Act).

3. See Watkins v. United States, 119 U.S. App.D.C. 409, 343 F.2d 278 (1964).

4. D.C.Code § 2-2202 (1961).

5. "Obviously the intelligence quotient of the child or the economic position of his family cannot be controlling." Shioutakon v. District of Columbia, 98 U.S.App.D.C. 371, 375, 236 F.2d 666, 670 (1956). Cf. Griffin v. People of the State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). The recently drafted Plan for Furnishing Representation for Indigent Defendants in Criminal and Quasi-Criminal Cases in the District of Columbia, pursuant to the Criminal Justice Act of 1964, 18 U.S.C. 3006A, provides that "The [Juvenile Court] Judge before whom a person initially appears in Court will, in accordance with the District of Columbia Code provisions relating to the Juvenile Court and the rules promulgated by the Court * * * advise the person of his rights, including his right to appointed counsel at that and every succeeding stage of the proceedings." *Plan, supra,* § 10 (b). That this plan contemplates counsel in the waiver proceedings is implicit in the provision that "the attorney shall notify the Coordinator whether he desires to

right to have counsel appointed must be so informed, Blue v. United States, 119 U.S.App.D.C. 315, 342 F.2d 894 (1964), and any abandonment of that right must be "intelligent." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Blue v. United States, *supra*; Shioutakon v. District of Columbia, 98 U.S.App.D.C. 371, 375, 236 F.2d 666, 670 (1956). It will be unnecessary to appoint counsel where the judge retains jurisdiction as a matter of course.

 In the present case, the juvenile was not advised of his right either to retained or appointed counsel under both the Juvenile Court Act and the Legal Aid Act. Hence the waiver proceedings were invalid.

 The Government urges that any impropriety in the waiver proceedings is not fatal since the District Court is authorized to exercise the powers of the Juvenile Court. D.C.CODE § 11–914 (1961). This is said to operate as a safety valve.[6] But the waiver question was primarily and initially one for the Juvenile Court to decide and its failure to do so in a valid manner cannot be said to be harmless error.[7] It is the Juvenile Court, not the District Court, which has the facilities, personnel and expertise for a proper determination of the waiver issue.[8] It follows that the District Court should remand to the Juvenile Court for a new determination of waiver.

 If appellant is not waived on remand, then the indictment in the District Court must be dismissed. On the other hand, if appellant is waived, the District Court should consider whether appellant suffered any prejudice in the District Court as a result of the invalid waiver and take all necessary steps to correct it.[9] For example, properly conducted waiver proceedings on remand may disclose information, hitherto unknown to the District Court, which could alter (1) its determination whether to proceed as a Juvenile Court;[10] (2) its choice among sentencing alternatives;[11] (3) its or appellant's decision regarding appropriateness of raising the insanity defense.[12] The District Court might therefore find it necessary either to dismiss the indictment and proceed as a Juvenile Court, conduct a new sentencing hearing and

represent the person * * * in the District Court upon waiver of the Juvenile Court jurisdiction." *Plan, supra,* § 10 (c).

6. The Government says that appellant did not request the District Court to proceed as a Juvenile Court. The record clearly shows, however, that such a request was made.

7. "[T]here can, of course, be no question that the Juvenile Court, like any other is, subject to correction for failure to observe the procedural commands of the statute under which it functions." Kent v. United States, 119 U.S.App.D.C. 378, 386, 343 F.2d 247, 255, cert. granted, 381 U.S. 902, 85 S.Ct. 1450, 14 L.Ed.2d 284 (1965).

8. "The 'full investigation' by the judge, specified in the statute * * * includes evaluation of the juvenile and his record, made by the judge with the benefit of the contribution of assistants with special background in the social sciences." Harrison v. United States, No. 17991, decided Dec. 7, 1965 (*en banc*) (slip op. pp. 23–5).

9. See Dancy v. United States, No. 18,366, decided Oct. 14, 1965 (slip op. p. 4).

10. See Franklin v. United States, 117 U.S. App.D.C. 331, 336, 330 F.2d 205, 210 (1964); Green v. United States, 113 U.S.App.D.C. 348, 308 F.2d 303 (1962); Pee v. United States, 107 U.S.App.D.C. 47, 51, 274 F.2d 556, 560 (1959); United States v. Anonymous, 176 F.Supp. 325 (D.C.D.C.1959) (where this process was invoked by the court).

11. Cf. Williams v. People of State of New York, 337 U.S. 241, 247–251, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); Leach v. United States, 122 U.S.App.D.C. ——, 353 F.2d 451 (1965). Compare Coleman v. United States, 118 U.S.App.D.C. 168, 334 F.2d 558 (1964) (*en banc*); Peters v. United States, 113 U.S.App.D.C. 236, 307 F.2d 193 (1962).

12. See Cross v. United States, 122 U.S. App.D.C. ——, 354 F.2d 512 (1965); Whalem v. United States, 120 U.S.App. D.C. 331, 337, 346 F.2d 812, 818 (1965); Rollerson v. United States, 119 U.S.App. D.C. 400, 343 F.2d 269 (1964).

determination, order a new trial, or enter such other corrective order as may be required to eliminate prejudice.[13]

To assist the District Court in the disposition of juveniles who challenge their waivers without counsel, we recommend the following: If the juvenile has not yet been brought to trial, the indictment should be held in abeyance pending remand to the Juvenile Court for redetermination of waiver; and if jurisdiction is retained by the Juvenile Court, the indictment should be dismissed. As to all others whose convictions have not become final, the procedure required in the present case should be followed. Since the Government is hereafter on notice of the juvenile's right to counsel upon waiver, any future indictments of juveniles denied this right should be dismissed.

Since the Juvenile Court on remand will reconsider waiver on a new record in accordance with this opinion, we need not now consider appellant's contentions that the Juvenile Court failed to conduct a "full investigation" and abused its discretion. The present record before us does not show why the Juvenile Court waived appellant or what it considered. We expect that the record of the proceeding on remand will if waiver is ordered.[14]

Remanded for further proceedings in accordance with this opinion.

---

13. We are unable to sustain the contentions of appellant that the District Court erred in denying his motions (1) for suppression of evidence allegedly seized pursuant to an unlawful arrest, and (2) for a mistrial on the ground that the Government's redirect examination of one of its witnesses exceeded the scope of cross-examination.

14. In reviewing a conviction after waiver in Kent v. United States, 119 U.S.App. D.C. 378, 384, 343 F.2d 247, 253, n. 6, cert. granted, 381 U.S. 902, 85 S.Ct. 1450, 14 L.Ed.2d 284 (1965), we said, without a statement of reasons, that "our task remains the one of weighing the decision in the light of what the record discloses." In the present case the record discloses nothing upon which to predicate review.

Before the trial in *Kent*, the child sought review of the Juvenile Court's determination by the Municipal Court of Appeals (now the District of Columbia Court of Appeals). We upheld denial of review, saying that

"The record before us and before the Municipal Court of Appeals is woefully inadequate for [reviewing the Juvenile Court's waiver determination] * * *. We can only speculate that the Juvenile Court may have relied on information in the social and probation reports and other information accumulated during the preceding two years, as well as interviews admittedly had with the juvenile and his mother following his arrest, and perhaps other factors. *Patently on such a record, the Municipal Court of Appeals was not in a position to ascertain what investigation was made.*" Kent v. Reid, 114 U.S.App. D.C. 330, 334, 316 F.2d 331, 335 (1963) (emphasis supplied).